## LE CESNE vs. COTTIN.

APPEAL from the court of the first district.

East'n District.
May, 1824.

BINGEY
vs.
COX.

PORTER, J. delivered the opinion of the court. This cause is not presented for decision on its merits, but in order to understand the points made, and the opinion we have formed on them, it is necessary to state the proceedings from the institution of the suit up to the present time.

This action was commenced by attachment. In the petition it is stated that Jean Baptiste Cottin of the city of New-Orleans, was indebted to the plaintiff in the sum of $7000, with interest ; and that he had deceased. leaving as heirs, his father Vincent Cottin, and his wife Marguerite Debon, the former, for two thirds of his estate, and the latter, for one third only ; and that Cottin the father, resided permanently out of the state.

The attachment was levied on credits and effects of the defendant, and an attorney appointed to defend his rights, who filed an answer to this suit, in which he denied the jurisdiction of the court, on the ground that both plaintiff and defendant were subjects to the King of France, and residents of that country,

The district court does not lose jurisdiction of a cause before it, when the defendant leaves no property within the reach of the court of probates. Whether a foreigner can be admitted as beneficiary heir? *Quere.*

East'n District.
*May,* 1824.

LE CESNE
*vs.*
COTTIN.

and pleaded several other matters in avoidance of the action.

The cause thus put at issue stood so for some years, and various proceedings were had on it. Before reaching a point at which final judgment could be rendered, Cottin, the father, died ; and the first matter which appears on record in consequence of his decease, is a motion of the counsel who had been appointed to defend his interests in this suit, suggesting the fact of his decease, and calling on the plaintiff to shew cause why his heirs resident in France should not be made parties defendant, and an attorney appointed for them.

This application was resisted on the part of the plaintiff ; the court however sustained it ; directed the heirs to be made parties to the suit ; and that the counsel who had formerly appeared for their ancestor, should be appointed to represent them.

The attorney thus appointed, filed an answer for the heirs, in which they state :

1. That the allegations contained in the petition are not true.

2. That they know not the signature of the deceased B. Cottin, the son of their *author,* Vincent Cottin.

East'n District
*May*, 1824.

LE CESNE
*vs.*
COTTIN.

3. That the title if genuine, was made for the purpose of covering a donation, to the prejudice of the legitimate or the legal portion of Vincent Cottin in the succession or estate of his deceased son, and that the said donation is void on another ground, as not being clothed with formalities required by the laws of the place where the same was made.

Subsequent to the putting in of this defence, the heirs filed another answer by an attorney not appointed by the court, but who derived his authority from the defendants themselves. This answer alleges that the persons therein named are heirs of Vincent Cottin, that they reside at Harfleur in France, and that they have accepted the succession with the benefit of an inventory.

That the court has no jurisdiction of the cause because the suit was originally commenced against Vincent Victor Cottin, their ancestor to recover a pretended debt due by his deceased son, whose succession the said Vincent had accepted under the benefit of an inventory, and the cognizance thereof, was of the exclusive jurisdiction of the court of probates.

East'n District.
*May*, 1824.

LE CESNE
*vs.*
COTTIN.

2. That the defendant's themselves residing in France and having there accepted their ancestor's succession, under the benefit of an inventory, it is there, and not here, that the pretended debt is to be liquidated.

The other parts of the answer reiterated the same allegations, of that first pleaded by the attorney, appointed by the court, to represent the defendants as absent heirs.

The court sustained this plea to the jurisdiction, on the ground that Vincent Cottin having accepted the succession of his son J. B. Cottin only under benefit of an inventory, all claims against him in that capacity were of the exclusive jurisdiction of the court of probates, and ordered the petition to be dismissed with costs.

From this decision the plaintiff has appealed, and in the argument several questions have been raised which present no inconsiderable difficulty in the decision. The embarrassment however which arises on that, on which the judge *a quo* decided the cause, does not proceed from any hesitation we have in recognizing the general principle on which he considered it his duty to dismiss the case. There can be no doubt but that if it should be found

that V. Cottin the father, accepted his son's succession only under the benefit of an inventory, that it was before the court of probates, any claim against that succession should have been prosecuted. But it has been strenuously urged on the part of the plaintiff, that before the ancestor of the defendants made the declaration by which he claimed to take the succession of his son as beneficiary heir, he had done acts in relation to that succession, which deprived him of the right of accepting it in that capacity, and that subsequent to the declaration, he had so acted as to make himself responsible as heir pure and simple.

Before noticing particularly what these acts were, it will be proper to state the principles of law which govern cases of this kind, and see how a succesion is considered as accepted purely and simply by the heir. On this head, our code presents rules at once clear and positive. According to it, a succession may be accepted simply, or under the benefit of an inventory; the simple acceptation may be either *express* or *tacit*, and it is *express* " when the heir assumes the quality of such in some authentic or private instrument, or in some judicial proceeding." *C. Code* 162, *art.* 77. The plain-

tiff asserts that the ancestor of the present de-
fendant did, in more than one instance, assume
this quality, and in support of the assertion
he produces, among other documents, the
record of a suit instituted by the father, some
years before the declaration made by him, that
he accepted the succession with the benefit of
an inventory, in which suit he takes on him-
self the quality of heir. On examining the
petition filed in that action, we find the plain-
tiff is fully sustained in this assertion. In it
V. Cottin, states that J. B. Cottin, then late
deceased, was his legitimate son, that he had
died leaving no issue capable of succeeding
him, and that the plaintiff and one natural
child were the only lawful *heirs* of the said
J. B. Cottin. The prayer, or concluding
part of the petition, contains language, still
more unequivocal, it requires that the defen-
dant may be condemned to deliver to the pe-
tioner as heir, the two thirds of the succession.
When the law and this instrument are placed
together and compared, it is difficult to con-
ceive how a doubt can be fairly entertained
that the expressions used in the latter, do not
amount to an acceptance, pure and simple.
The first declares that if the person who has a

East'n District.
*May,* 1824.

LE CESNE
*vs.*
COTTON.

When the law, and this instrument are placed together and compared, it is difficult to conceive how a doubt can be fairly entertained, that the expressions used in the latter, do not amount to an acceptance pure and simple. The first declares, that if the person who has a right to the succession, take on himself *the quality of heir in a judicial proceeding,* he is considered as accepting simply, or in other words without the benefit of an inventory. The record of a suit in a court of justice is presented, in which one standing in that situation, calls himself heir. If any thing can satisfy the words of the statute, this surely must, and it is rare we believe, that the provisions of any law find a case so clearly within their operation.

It was urged, that the action in which these expressions were used, was brought for the purpose of having it ascertained whether Cottin, *pere,* was heir, or the wife of his son, who claimed the succession in right of her deceased child ; and that as soon as a judgment of the court of last resort established his quality, he made a declaration that he accepted with the

benefit of an inventory. If such had been the object of the suit, the answer would be, that the plaintiff should not have called himself heir until the court established his right; for by doing so, he took on himself the quality of heir, and the law declares that in such case he shall be considered as accepting purely and simply. But the language used in the petition does not support even this argument. The plaintiff claims two thirds of the estate from the wife of the deceased—asserts his right as heir to his son—avers that he has made an amicable demand of the property, and prays,—not, that his quality of heir should be recognised but that the portion of the estate which belongs to him as heir, should be decreed to him. We have no doubt that this was an assumption of the quality of heir, and in support of this opinion, we refer to the following authorities: *Toullier, Droit Civil, vol. 4. liv. 3, tit. 1, chap. 5, no. 326. Pandectes francaises, vol. 6, no.* 197, 371, *ibid* 420, *no.* 235, *Pothier, traite des succession, chap.* 3, *art.* 1, § 1, *ib.* 2, § 3.

Were it necessary to place the opinion of the court, that the ancestor of the defendant accepted the succession of his son purely and simply on other ground, the record furnishes

East'n District.
*May*, 1824.

LE CESSE
*vs.*
COTTIN.

us with the means of doing it. By law a faithful and exact inventory must be made of all the property of the deceased. This the heir may do, either before or after accepting, or he may even accept under an inventory made by another person. *Pandectes francaises, vol.* 6, *no.* 226. But no matter when, or by whom made, this inventory must contain a full and correct account of the objects which form the succession, and if it does not, the heir is deprived of the benefit of it. *Pandectes francaies, vol.* 6, *p.* 409, *no.* 228, *Toullier, vol.* 4, *liv.* 3, *tit.* 1. *chap.* 5, *no.* 362. Now in this case the inventory which was made by the executor, and which it was argued, dispensed with the necessity of the heir making one, is expressly charged by that heir in the petition against the wife of his son, to be untrue ; several material omissions are enumerated, and some it is stated, will be thereafter proved. If this declaration was correct, and as to the petitioner in that case, and those claiming under him, it must be taken as such, unless shewn to have been made in error ; there was not in the first instance that true and faithful inventory which is indispensable to enable the heir to accept under, and no step has been since taken

East'n District.
 May, 1824.

LE CESNE
 vs.
COTTIN.

By him to supply its defects, although the knowledge of them is expressly avowed by him.

On this part of the case then, we conclude that Cottin, the father, made himself responsible in his individual capacity, for the debts of his son, and that there was no error either in the manner in which suit was commenced against him, nor in originating it, in the district court.

But the ancestor of the defendant has since died, and it becomes necessary to consider what effect that event has on the cause. His representatives who have been admitted parties to the suit, have pleaded, that the court before which it was pending, have lost jurisdiction of it, and that as the succession has been opened in France, and they have accepted under the benefit of an inventory, the plaintiff must pursue his remedy in that country. If this were the only question before us, we should have neither difficulty nor hesitation in answering it in the negative ; but as on questions of this kind, the court is bound to notice all objections to jurisdiction *ratione materiæ*, whether specially pleaded or not, we find ourselves in the necessity of considering the different questions which have been raised in argument.

East'n District.
*May,* 1824.

LE CESNE
vs.
COTTIN.

It has been contended, that if the plaintiff be not compelled to seek his remedy in France, he must do it before the court of probates in this city, which under our law, has sole and exclusive cognizance of all claims against successions, administered by a curator, executor, or beneficiary heir. It does not appear that the present defendants have taken any steps to have the succession opened in the court of probates, nor done any thing there, by which their character as beneficiary heirs can be determined. But admitting they had taken steps in our courts to be received as such, we should then have presented to us, the very important question, whether the representatives of a person who dies abroad, and who themselves live in a foreign country, can, while residing there take on themselves the quality of beneficiary heir in relation to a succession opened here, and thus compel those who have claims on the estate, to follow these heirs under another government to enforce their payment. It is clear that a curator, or administrator in another country could not in virtue of the authority conferred on him bring suit here, it being the imperative duty of our courts to protect their own citizens, and not to suffer the pro-

perty which is to answer their claims to be withdrawn beyond their reach. As the law has declared that the beneficiary heir is to be considered an administrator of the estate in relation to creditors and legatees, the right of a foreigner to exercise that trust here, under an authority vested in him by the tribunals of another country, cannot be distinguished from that of the curator, administrator, or any other agent. *C. Code*, 168, 104, 1 *Dallas*, 456, 1 *Cranch*, 259, 9, *ibid*, 151, 2, *Massachusetts*, 384.

The principle on which this rule has been to established, greatly aids the investigation of the question just stated. A moment's consideration will shew that almost every reason in which prevents the administrator, curator, or beneficiary heir holding their authority from another government, to administer an estate in this country, operates against the demand of a foreigner not domeiciliated in the state, from exercising any of these trusts. The difficulty of sueing them, and compelling a faithful discharge of their duty, and consequent want of security for those interested in the settlement of the estate, exist equally in both cases. Delay and expence must, be produced in

every case, in the recovery of debts and lega-
cies; in not a few, the entire loss of them,
may be the consequence. Some of the duties
which persons admitted to these situations
have to perform, are strictly personal, and an
examination of the different provisions of our
law, renders it very questionable, it was ever
contemplated these offices should be exercised
through an agent or attorney in fact. The
persons appointed are required to make an
inventory ; to give security ; it is their duty to
administer faithfully the estate ; to enquire
what debts are due and recover them ; to scru-
tinize the various demands presented against
the succession ; to oppose all that are unjust and
to afford every facility in their power for the
liquidation and payment of those that are
honest ; to render an account of their admin-
istration contradictorily with those interested.
The curator must take an oath before the
judge, for the faithful administration of his
office. The beneficiary heir on failing to give
security, can be compelled to deposit the
money received by him, in one of *our* banks.
How can the discharge of these duties be en-
forced, where the person who has to perform
them, resides in France, England, or Russia,

sends an agent here to collect the monies due an estate, and gives him no authority to represent his principal in court. We know of none. The creditors and legatees therefore, would be without remedy, unless we should consider such, the right of following a foreigner in whatever quarter of the globe he resided; but this in many cases, indeed in the greater number, would be the same as having no remedy at all. It was we presume from such considerations or others similar, that a rule was established in the Spanish jurisprudence, that an inheritance must be accepted by the *heir in person*, and that this was one of those acts which could not be done by an agent or attorney in fact. *Cur. Phip. p. 2, juicio executivo, § 27, possssession hereditaria, no. 1.*

To these arguments which are principally bottomed on inconvenience, it may be answered that the beneficiary heir does not enter on the administration in virtue of an appointment from our courts, but in right of the relation in which he stood to the deceased; that all the duties here ennumerated might be discharged by an attorney in fact; and that as the law does not distinguish between the resident, and non resident heir, the courts cannot. It is

unnecessary for us to express an opinion on this question, which is not free from difficulty, as we all think that whether an estate can be administered by a beneficiary heir, living abroad, or not, the result in this case must be the same.

It was contended in argument, that admitting it could not, then the estate was a vacant one, a curator must be appointed for it, and that this necessarily vested the cognizance of all claims against the succession in the court of probates. The correctness of this position depends on a fact of which the record gives us no evidence. It does not *necessarily* follow, that on the death of a defendant in an action pending in our ordinary courts, the case must be transferred to the probate court. It is only where the party has left property within its jurisdiction, to be administered, that this disposition must be made of the case. If there be no effects of which an inventory can be made, nothing to be sold, and no debts to be collected, there can be neither curator, or beneficiary heir appointed, and that court has no jurisdiction of claims against the deceased. *C. Code*, 172, *art.* 118 & 122.

East'n District.
*May*, 1824.

LE CESNE
*vs.*
COTTIN.

The evidence taken in the case now before us, shews, that Cottin the father, solu all his right in his deceased son's estate, and that the property attached, has been given up on security ; the probability therefore is, that the deceased has left no estate in this country, but whether he did, or not, the court cannot act on the *presumption,* but the *proof* of that fact. Were we to send this cause now before the court of probates, and it should turn out there was not any estate to be administered, there would be no person against whom the plaintiff could carry on his suit, and after looking in vain for a defendant, he would be obliged to abandon the pursuit, and lose his remedy. In a case circumstanced like this, we are of opinion the ordinary tribunal does not lose its jurisdiction by the death of the defendant, and that it may proceed to final judgment, according to the principles established in the case of *Montreuil* vs. *Jumonville, 4 Martin*, 485.

The admission on the record of the defendants as beneficiary heirs, cannot affect the decision of the case ; they do not aver that they have been received as such in the court of probates, that their ancestor left property in this

state, or that they have made an inventory of it. Whether by these acts they have made themselves heirs pure and simple, or will incur that responsibility by continuing to defend the suit, we need not now enquire.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided, and reversed, and it is further ordered, adjudged, and decreed, that the case be remanded to the district court, with directions to the district judge to proceed therein according to law, and that the appellee pay the costs of the appeal.